**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PAUL PRIMAVERA,**

      **Petitioner,**

**v.**                            **Case No. 8:14-cv-2882-MSS-AEP**

**SECRETARY, DEPARTMENT**
**OF CORRECTIONS,**

      **Respondent.**

_____/

**O R D E R**

Primavera petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for promotion of a sexual performance by a child. (Doc. 1) After reviewing the petition and supporting memoranda (Docs. 1, 2 and 7), the response (Doc. 11), the state court record (Doc. 13), and the reply (Doc. 28), the Court **DENIES** the petition.

**PROCEDURAL HISTORY**

A jury found Primavera guilty of eight counts of promotion of a sexual performance by a child (Doc. 13, Exhibit 1 at 208–10), and the trial court sentenced Primavera to 15 years of prison and 15 years of probation. (Doc. 13, Exhibit 1 at 231–44) Primavera appealed his convictions and sentences and the state appellate court affirmed. (Doc 13, Exhibit 4)

The post-conviction court denied Primavera relief (Doc. 13, Exhibit 7), and Primavera did not appeal. Primavera's federal petition followed.

**FACTS**

Waylon Wilbert met Primavera at a "gay hook-up cruise bar" in Tampa, Florida. Wilbert was a confidential informant for the Tampa Police Department, a seven-time

1

convicted felon, and a prostitute. Wilbert engaged in sex with Primavera for money and drugs four or five times at Primavera's home. During one encounter, Primavera viewed child pornography on his computer. Primavera told Wilbert that he was short on money but if Wilbert could help Primavera sell the child pornography, Primavera could continue to pay Wilbert for sex. Wilbert told Primavera that he knew a doctor who was interested. The next day, Wilbert called the detective who was his handler at the police department and told him about the child pornography. The detective suggested that Wilbert tell Primavera to call the detective, in his undercover capacity, if he wanted to sell the child pornography.

The detective, who pretended to be the doctor, spoke with Primavera and they agreed to meet at a motel so that Primavera could sell the detective a compact disc containing child pornography. On a recorded telephone call, Primavera acknowledged that he was creating the compact disc. He told the detective that he had a "sh*t load" of child pornography and could make more compact discs. At the motel, Primavera set the price for the compact disc which contained eight videos and told the detective that he trusted him and would contact him again. A video recording showed the detective arrest Primavera after Primavera accepted money and gave the compact disc to the detective.

After waiving his constitutional rights, Primavera admitted to downloading the eight videos but denied making the compact disc. Primavera claimed that Wilbert saw the child pornography on his computer and came up with the plan to sell the child pornography. Primavera felt coerced and entrapped because he desperately needed money. Primavera admitted that police would find more child pornography on his computer at home and denied that his roommates used his computer. Police seized his computer and found numerous files containing child pornography.

The prosecution published eight condensed segments of the videos that Primavera sold to the detective. The eight videos corresponded with the eight charges in the information. An agent who investigates computer crimes opined that the videos depicted actual children under 18 years old and were not computer generated.

During the defense case-in-chief, Billy Norton testified that he and Wilbert worked together as prostitutes at the "cruise bar." Once, Primavera gave Norton money for drugs and Norton did not return with the drugs. Primavera became upset and told a bartender who prohibited Norton from returning to the bar. Wilbert became angry at Primavera. After Primavera's arrest, Wilbert told Norton, "[D]o you remember the guy that got you in trouble[?] . . . [W]ell he got paid back." During his testimony, Wilbert denied making that statement.

Primavera testified that Wilbert coerced him to sell the child pornography to the detective. Wilbert asked Primavera's roommate to install the computer program used to download child pornography on Primavera's computer because Wilbert wanted to view child pornography. Wilbert came up with the plan to sell the child pornography to a "rich doctor." Wilbert pled with Primavera to go along with the plan at least ten times but Primavera initially refused. Wilbert promised to rent a room at a casino where they both could use drugs and engage in sex. Eventually, Primavera agreed to speak with the doctor who offered to pay a thousand dollars for the child pornography. Primavera's roommate created the compact disc, and Primavera reluctantly agreed to the plan.

## STANDARDS OF REVIEW

**AEDPA**

Because Primavera filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law

or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

**Ground One**

Primavera asserts that the trial court's denial of his motion for judgment of acquittal at trial was contrary to and an unreasonable application of clearly established federal law. (Docs. 1 at 5–7 and 7 at 13–18) He contends that the prosecution failed to rebut evidence in support of his subjective entrapment defense that proved that he was not predisposed to commit the crimes. (Doc. 7 at 13–18)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 11 at 8–11) Primavera raised this claim in his brief on direct appeal but neither "cit[ed] in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds," nor "simply label[ed] the claim 'federal.'" *Reese*, 541 U.S. at 32. (Doc. 13, Exhibit 2 at 13, 17–19) Because Primavera did not cite *Jackson v. Virginia*, 443 U.S. 307 (1979), or the federal due process clause, he failed to alert the state court to the federal nature of his claim. *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 460 (11th Cir. 2015) ("[S]imply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts."); *Reese*, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

If Primavera returned to state court to exhaust the claim, the state court would deny the claim as untimely, successive, and procedurally defaulted. (Doc. 13, Exhibit 6) Fla. R. Crim. P. 3.850(b), (c), (h). Primavera does not demonstrate cause and actual prejudice or a miscarriage of justice to excuse the default in federal court. (Docs. 18 at 14–16, 19 at 26–33, and 28) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claim is barred from federal review. *Snowden*, 135 F.3d at 736.

Ground One is **DENIED**.

**Ground Two**

Primavera asserts that the trial court erred by denying his motion to dismiss the information for objective entrapment because police worked with an informant who engaged in outrageous conduct. (Docs. 1 at 7–8 and 7 at 20–22) After hearing testimony at an evidentiary hearing, the trial court denied the motion without providing reasons for its ruling. (Doc. 13, Exhibit 1 at 293)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 11 at 8–11) In his brief on direct appeal, Primavera raised the claim but neither cited federal constitutional authority nor labeled the claim "federal." *Reese*, 541 U.S. at 32. (Doc. 13, Exhibit 2 at 14–15) Primavera instead cited *State v. Glosson*, 462 So. 2d 1082 (Fla. 1985) (Doc. 13, Exhibit 2 at 14) which "reject[ed] the narrow application of the due process defense found in the federal cases" and reviewed a similar claim under the due process clause in Florida's state constitution. *Glosson*, 462 So. 2d 1082, 1085 (citing Art. I, §9, Fla. Const.). Because Primavera did not cite federal constitutional authority and instead cited a case that expressly rejected federal law, he failed to alert the state court to the federal nature of his claim. *Gray v. Netherland*, 518 U.S. 152, 163 (1996) ("[I]t is not enough to make a

general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court.") (citing *Anderson v. Harless*, 459 U.S. 4 (1982)).

If Primavera returned to state court to exhaust the claim, the state court would deny the claim as untimely, successive, and procedurally defaulted. (Doc. 13, Exhibit 6) Fla. R. Crim. P. 3.850(b), (c), (h). Primavera does not demonstrate cause and actual prejudice or a miscarriage of justice to excuse the default in federal court. (Docs. 18 at 11–12, 19 at 20–23, and 28) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claim is barred from federal review. *Snowden*, 135 F.3d at 736.

Even if the claim is adequately exhausted, Primavera could not demonstrate that the state court's denial of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Clearly established federal law "refers to the holdings, as opposed to the *dicta*, of [the U.S. Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. The U.S. Supreme Court has never held that outrageous government conduct violates the federal due process clause and only mentioned in *dicta* that a future case may present facts that demonstrate a violation. *United States v. Russell*, 411 U.S. 423, 431–32 (1973) ("While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed.") (citation omitted). *Accord United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have discussed it only in *dicta*. Several of our sister circuits

have either rejected this defense completely or have been sharply critical of the defense.") (citations omitted). *United States v. Ciszkowski*, 492 F.3d 1264, 1272 (11th Cir. 2007) (Carnes, J., concurring) ("Unless and until we actually see government conduct outrageous enough to motivate a panel of this Court to set aside a conviction, or sentencing manipulation egregious enough to lead to a vacated sentence, those defenses cannot be found in the law of this circuit.").

Because the claim is procedurally barred from federal review and the state court did not rule contrary to clearly established federal law, the claim fails on federal habeas.

Ground Two is **DENIED**.

**Ground Three**

Primavera asserts that the trial court erred by both allowing the prosecution to publish at trial eight videos depicting child pornography and denying his motion for mistrial based on the publication of that evidence. (Docs. 1 at 8–10 and 7 at 19–20)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 11 at 8–11) In his brief on direct appeal, Primavera raised the claim but neither cited federal constitutional authority nor labeled the claim "federal." *Reese*, 541 U.S. at 32. (Doc. 13, Exhibit 2 at 15–17) Primavera cited *United States v. Merino-Balderrama*, 146 F.3d 758, 762–63 (9th Cir. 1998) (Doc. 13, Exhibit 2 at 16), which held that a federal district court misapplied Rule 403, Federal Rules of Evidence, by incorrectly concluding that the probative value of evidence of child pornography outweighed the danger of unfair prejudice. Primavera argued that the trial court erroneously weighed the probative value of evidence at his trial against the danger of unfair prejudice. (Doc. 13, Exhibit 2 at 16–17)

The admission of evidence may violate the due process clause of the Fourteenth Amendment. *Blackburn v. State of Ala.*, 361 U.S. 199, 206 (1960). Because *Merino-Balderrama* turns on the misapplication of a federal rule of evidence and not the violation of a federal constitutional right, Primavera did not fairly present the federal constitutional nature of his claim to the state court. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

If Primavera returned to state court to exhaust the claim, the state court would deny the claim as untimely, successive, and procedurally defaulted. (Doc. 13, Exhibit 6) Fla. R. Crim. P. 3.850(b), (c), (h). Primavera does not demonstrate cause and actual prejudice or a miscarriage of justice to excuse the default in federal court. (Docs. 18 at 11–12, 19 at 20–23, and 28) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claim is barred from federal review. *Snowden*, 135 F.3d at 736.

Even so, the claim is meritless. Before trial, Primavera moved for the parties to stipulate that the eight videos contained child pornography instead of publishing the videos to the jury (Doc. 13, Exhibit 1 at 107), and the trial court denied the motion as follows (Doc. 13, Exhibit 1 at 303):

> [Trial counsel:]     That leaves us with [the] motion to require acceptance of [the] stipulation. This one, the Court has seen the arguments before. I'm offering — I've viewed the alleged images of child porn. I'm prepared to stipulate that they are, indeed, children under 18 and they're engaging in acts of sexual conduct. If the Court would prohibit the State from publishing that evidence to the jury based on a 403

|                 | argument, I believe the State's objecting to that. |
|-----------------|-----|
| [Prosecutor:]   | Judge, we'd base our arguments on *U.S. v. Alfaro-Moncada*, which is at 2010 Westlaw 2103442. [A] [f]ederal case on point with requiring the State to accept a stipulation. [The] [f]ederal court said that was not necessary in a child pornography case especially when the defense is either knowledge or knowing possession, which based on some of the conversations I've had with [trial counsel], that seems to be what their defense will be. So we would rely on that. |
| [Court:]        | That motion will be denied. |

Just before trial, the defense renewed the motion, and the trial court denied the renewed motion as follows (Doc. 13, Exhibit 1, Trial Transcripts at 175–76):

|                 |     |
|-----------------|-----|
| [Trial counsel:] | There's one other issue I would like to address briefly if I could. We talked about this in chambers a little bit, but I filed a motion to require acceptance of [a] stipulation offering to basically concede the first two elements of the counts charged that the defendant promoted the — he sold the disk. |
|                 | The disk does, indeed, contain depictions of sexual conduct by children. We did litigate this in front of Judge Tharpe. Basically my argument is the 403, the danger of undue prejudice for having the jury watch the child porn videos would outweigh the probative value because with the stipulation, the State would not need to prove the age of the kids or the fact that it was, indeed, sexual conduct or even that Mr. Primavera sold it. |
|                 | Judge Tharpe did deny that motion, but if I could, I'd just like to renew it and have a |

|              | standing objection to the publication of the child pornography videos. |
|--------------|-------------------------------------------------------------------------|
| [Court:]     | Let me hear from the State. |
| [Prosecutor:] | Judge, it is our burden to prove each and every element of the promotion. That includes that it's an actual child. This is not a computer generated or computer animated image, that there's sexual conduct therein and we do that by publishing only portions of these videos. |
|              | Some of these videos are an hour long, so it's only a brief — about a minute portion of each one that we're going to show. We're not in a position that we — because of the way we have to present our case and also because of what we anticipate some of the defenses in this case may be and proving that the defendant knew the conduct, the character of those particular items, that he knew the content of them, rather, it's our intent to show portions of the videos in order to prove our case. |
| [Court:]     | All right. I want to say a couple of things on this. First, counsel, you alluded to us having discussed that in chambers. I want the record to be absolutely clear. We did not discuss the substance of any of that in chambers. Rather, in discussing scheduling matters only, what was brought up was that, as a scheduling matter only, you may wish to renew certain matters that had been decided in the lettered division, that is Judge Tharpe's decision previously. |
|              | And what you were told, as all counsel were told, is that you certainly may renew any and all matters as is your right to do that throughout the proceeding, and now you've done that. I'll go ahead and also say I don't sit as an appellate court. |

> Judge Tharpe had a hearing on this matter, ruled on that decision before it was transferred to this trial division. That said, based upon what has been presented to me, you know, if called upon for that ruling, it would be the same. But that is what's here today and we'll note your objection and we'll give you that continuing objection, sir, as you've requested. Okay?

During trial, the prosecution published the segments of the eight videos, and an agent who investigates computer crimes opined that the segments depicted actual children. (Doc. 13, Exhibit 1, Trial Transcripts at 424–32) After the publication of the videos, the defense moved for a mistrial, and the trial court denied the motion as follows (Doc. 13, Exhibit 1, Trial Transcripts at 433–34):

| [Trial counsel:] | Your Honor, at this point I'd move for a mistrial based on the fact that there were less restrict — or less prejudicial or shocking ways that the evidence could have been published to the jury. I was watching the jury carefully. |
|---|---|
| | Although they didn't make any gasps or sighs, there [was] at least one of them scowling. While they didn't enjoy doing it, they were doing their duty. So to preserve the previous offer to stipulate, I would move for a mistrial based on that basis. |
| [Court:] | You may respond. |
| [Prosecutor:] | Judge, some of those videos were as long as 50 minutes [ ]. I played, at most, a minute and 30 second versions of them. And if you noticed very carefully the position — the times that I changed the video was merely to show the definitions of what is sexual deviance and sexual intercourse and that is all I played. |

[Court:] All right. I'm going to specifically find that all of that was short in duration. And given what counsel's represented, which I don't hear any rebuttal to, [it was] very brief compared to the entire content of it.

I want to make the record clear. I sat here and I also very carefully watched the jury. I did not see anything that I would characterize as a scowl. So that's not going to stand on the record. Your motion for mistrial is denied.

After trial, Primavera moved for a new trial based on the publication of the segments of the eight videos (Doc. 13, Exhibit 1 at 212–14), and the trial court denied the motion as follows (Doc. 13, Exhibit 1 at 261–70):

[Trial counsel:] The first issue, Your Honor, deals with the publication by the State of the child pornography videos, the eight separate videos that comprise counts one through eight, the promotion of a sexual performance by a child allegations. As the court knows, back in Division H, I did make an offer to stipulate to the fact that the videos were, indeed, child pornography.

In other words, that the people depicted in them were, indeed, real human beings under the age of 18 and were actually engaged in sexual conduct. [I asked] [i]f the court had been willing to prohibit the state attorney from publishing those videos to the jury[.] [T]he Division H judge denied that as well as this court denied it when I renewed the offer.

And the basis for that offer as to head off the 403 — rule 403 issue having to do with — the problem with child pornography cases is the images themselves are so often — none of the — obviously the jury

doesn't want to watch them unless they have to, and they did their duty.

There were actually a couple of panel members who were obviously not selected for the jury, but did raise it during *voir dire* that they — a couple of them stated they would not watch child pornography images at all. And I just bring that up to point out how abhorrent or nasty these images are to the average person who doesn't want to watch them.

I've cited three cases having to do with this issue. *Brown v. State*, 719 So. 2d 882, Florida Supreme Court, 1998. And I cite that case just for — it's a good discussion of the *Old Chief* doctrine having to do with stipulation. And I think Professor Ehrhardt sums it up best on page seven — headnote seven.

The court cites his Florida evidence section 403.1, 1998 edition where Professor Ehrhardt goes into a discussion that section 90.403 does not require the prosecution to accept every defendant's offer to stipulate to a fact or an issue. Counsel, meaning the State, is entitled to present her evidence in the manner she chooses and to have the trier of fact know the details of what occurred.

However, despite the fact that a rule — despite the rule that a party is not required to stipulate to a fact, section 90.403 is applicable to the evidence offered to prove the fact or issue. So even though I'll agree that the case law is clear that there's a — the prosecution is entitled to present its case how it wants to, how it chooses to, there's still the 403 analysis to be done.

[Court:]   Didn't we address a 403 analysis in the course of the trial?

[Trial counsel:]  Judge, I did — I did renew — yes, we did.

[Court:]  Okay. Go ahead.

[Trial counsel:]  And Professor Ehrhardt goes on at the bottom of that, quote, the offering party's need for the evidence is not nearly as great when the adverse party is willing to concede the fact or stipulate to it which is the case in Mr. Primavera's case.

The case law on this [ ] particular issue is — for some reason, it's all federal. There's — I cannot find a state case that actually specifically deals with child pornography in rule 403, but there are a couple of federal cases that are relevant which I cited.

*United States v. Alfaro-Moncada* . . ., an 11th Circuit[,] 607 F.3d 720, 2010. This was actually cited on another case by the state attorney arguing the same issue, but it actually cuts I think in favor of the defense.

Even though the 11th Circuit upheld the conviction of the defendant in *Alfaro-Moncada*, it does bring up a couple of points. The 11th Circuit in that case held that the admission of five still images of child pornography from the DVDs serve[d] valid purposes, but it points out in upholding the district court's — the conviction [that] [t]his is especially true since the jury was only shown a small number of the images on the DVDs, only five out of 4,650. So in that case, they cut down both the quantity of the images as well as showing still images versus videos.

The other case, *U.S. v. Merino-Balderrama* . . ., it's a 9th Circuit case, 146 F.3d 758, 1998. In that case, the 9th Circuit actually reversed the conviction for child

pornography in the district court based on the 403 issue.

And it's — the 9th Circuit stresses the part of the 403 analysis, the court — the trial court should consider any actual available substitutes. And they suggested just showing the box covers, the packaging for these particular videos instead of the images themselves and that was a reversal.

The point here is that — I know [the prosecutor's] going to say she used discretion and limited the length of the video. She did not play every second of each video, but I would argue that's insufficient because there were a couple of less graphic, less shocking alternatives available.

One would be just to show still images rather than the video, and the other would have been not to have the audio played because — since she was not — she was not proceeding under the enhancement statute, there was no requirement that she show either, number one, that they were videos or, number two, that there was audio.

So there were less shocking alternatives available which were not used other than limiting the time, which she did. . . .

[Court:]     Okay. Thank you. And I've read your motion more than once, counsel. So I went through it and I appreciate that. We'll hear from the State.

[Prosecutor:]     Judge, the second case that [trial counsel] cited is exactly analogous to what happened in this case where — obviously that's a federal case that's persuasive authority on the court, but that is the same exact principal under which the State was guided.

We took a very small portion of what was a large amount of — some of those videos were an hour long. The court, within the record of this case, made a very specific finding at the time — I don't know if it was at the renewed judgment of acquittal, but I remember the court making a very specific finding with the court up there actually notating the amount of time that the State had played each of those videos.

For that reason, Judge, we did exactly what the federal court in that case said was appropriate. Rather than — and again, I mean it could be a situation where we could have published all of that, but we did not do that.

The other in terms of the case law that [trial counsel] argued, the last case out of the 9th Circuit which, again, being persuasive authority, the 9th Circuit — if you follow the federal case law, the 9th Circuit is often different and has different rulings than the other circuits throughout the United States.

But that being said, that case is not applicable because, again, the statement by the court in that case is, well, the State should have — or the federal government should have shown the box covers. The federal government should have shown this.

The State of Florida had no option except to show the contents of the video or the disk that Mr. Primavera brought to that hotel room that night. We couldn't let the jurors look at the disk to see whether or not that was child pornography.

And as you well know, that's our burden to carry. Our burden to carry is to prove each and every element and that includes,

as the case law stands in the State of Florida now, proving that it's an actual child, proving that there is an act that fits within the statute.

And in terms of that last argument of less restrictive [means] of just showing still images, we can't do that when the allegation is alleged to be sexual battery because it takes showing a snippet of that video to show that it is a sex act on a child. We did that in very moderate, limited form.

I think, again, the record is very clear. The court made its findings and the State made argument in the course of closing that I think goes directly as corroborated by the evidence and the court's findings — to the jury that when they saw different portions of that video, it was to show them where a sex act [exchanged] either between mouth to penis or anal sex on a child.

And the record, I think, is abundantly clear on that. For that reason, Judge, we have presented our evidence. We are not required to accept any stipulation. The case law is clear on that. We chose not to accept that stipulation because, again, it is our burden to carry that forward to prove each and every element to the jury and we did that in a manner that was proper, in a manner that was legal and I ask that you deny the motion.

[Court:]              Anything else?

[Trial counsel:]    No, Your Honor.

[Court:]              Okay. Thank you. I've — I've read your motion, counsel, your detailed memorandum of law, case materials, all of that. I'll reflect that on your first issue, publication by the State of portions of the eight videos, I believe we did address that

19

in some detail and I think the record's
going to speak well to that.

This court did do a 403 analysis and made
its determinations. Nothing in the cases
that have been presented here today
change that analysis. I believe it was
correct factually and on the law. . . .

Whether the probative value of the videos outweighed the danger of unfair prejudice
under Section 90.403, Florida Statutes, and whether the trial court appropriately denied a
motion for mistrial are issues of state law, and a state court's determination of state law
receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.
1985) ("The federal courts must defer to a state court's interpretation of its own rules of
evidence and procedure.").

"[I]t is not the province of a federal habeas court to reexamine state-court
determinations on state-law questions. In conducting habeas review, a federal court is
limited to deciding whether a conviction violated the Constitution, laws, or treaties of the
United States." *Estelle v. McGuire*, 502 US. 62, 68 (1991). Relief on federal habeas is granted
either "if a state trial judge has correctly admitted evidence under state law, but [the]
application of the state rule violated a specific federal constitutional right," or "if a state trial
judge erroneously admitted evidence in violation of a state law and the error made the
petitioner's trial so fundamentally unfair that the conviction was obtained in violation of
the due process clause of the fourteenth amendment." *Thigpen v. Thigpen*, 926 F.2d 1003,
1012 (11th Cir. 1991). "An erroneous evidentiary ruling creates such fundamental
unfairness when the wrongfully admitted evidence is 'material in the sense of a crucial,
critical, highly significant factor.'" *Thigpen*, 926 F.2d at 1012 (citation omitted).

The prosecution charged Primavera with eight counts of promotion of a sexual performance by a child in violation of Section 827.071(3), Florida Statutes. (Doc. 13, Exhibit 1 at 171–77) For each count, the information alleged that Primavera "did, knowing the character and content thereof, promote a sexual performance by a child less than eighteen years of age, by producing, directing, or promoting a performance which included sexual conduct by a child." (Doc. 13, Exhibit 1 at 172–74) Section 827.071(1)(h), Florida Statutes, defines "sexual conduct" as:

> [A]ctual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.

The sexual performance must involve sexual conduct by an actual child. *Parker v. State*, 81 So. 3d 451, 453 (Fla. 2d DCA 2011) ("No matter how one parses the words, section 827.071 requires that the depicted sexual conduct be that of a child.") (citing *United States v. Williams*, 553 U.S. 285 (2008)).

Under state law, "the [prosecution] is not barred from proving facts pertinent to its prosecution simply because the defendant offers to admit them." *State v. Busciglio*, 426 So. 2d 1233, 1234 (Fla. 2d DCA 1983) (citing *Arrington v. State*, 233 So. 2d 634 (Fla. 1970)). Yet, "the defendant also has a legitimate concern in being judged only on the crime charged, and not being convicted on an improper ground due to the admission of evidence that carries unfairly prejudicial baggage." *Brown v. State*, 719 So. 2d 882, 887 (Fla. 1998). Consequently, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation

of cumulative evidence." § 90.403, Fla. Stat. *Young v. State*, 301 So. 3d 1089, 1090 (Fla. 1st DCA 2020) ("Relevant evidence is inherently prejudicial; however it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matters.") (internal quotation marks omitted).

At trial, the trial court reviewed the evidentiary issue four times and conducted adequate weighing under Section 90.403. The short excerpts were relevant to prove that the videos depicted "sexual conduct by a child," § 827.071(1)(h), Fla. Stat., and the publication of only a minute-long segment of each video diminished the danger of unfair prejudice. Even though the defense argued that the prosecution did not need to publish the videos to prove the crimes, necessity is not a requisite to the admissibility of evidence in state court. *Mackey v. State*, 277 So. 3d 762, 769 (Fla. 1st DCA 2019) ("'[R]elevancy rather than necessity' is the test for admission of potentially inflammatory photographs or video evidence of a crime.") (quoting *Pope v. State*, 679 So. 2d 710, 713–14 (Fla. 1996)).

Federal courts reviewing similar issues under similar rules of evidence confirm that the state court correctly allowed publication of the brief segments of the videos. *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) ("Even if showing the images to the jury created some risk of injecting emotions into the jury's decision-making, it was not an abuse of discretion for the district court to decide that the risk did not substantially outweigh the still images' probative value. That is especially true since the jury was only shown a small number of the images on the DVDs — only 5 out of 4,650."); *United States v. Fechner*, 952 F.3d 954, 959 (8th Cir. 2020) ("[T]he jury saw only short clips of a few independently downloaded videos. These videos were relevant to establish that Fechner knowingly possessed child pornography."); *United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009)

("Although [Polouizzi] did not contest that the images he received and possessed constituted child pornography, the stipulation was not an adequate substitute for the evidence offered. . . . [T]he risk of unfair prejudice was minimized by the mode of presentation.").

Because the trial court correctly admitted the evidence under state rules of evidence and the introduction of the evidence was not "so extremely unfair that its admission violate[d] 'fundamental conceptions of justice,'" the state court did not unreasonably apply clearly established law. *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Ground Three is **DENIED**.

## Double Jeopardy Claim and Ineffective Assistance of Counsel Claim

In his reply, Primavera asserts for the first time that his convictions and sentences violate due process and double jeopardy because all are based on a single video divided into eight separate segments. (Doc. 28 at 3, 5–6) He further asserts that trial counsel deficiently performed by stipulating to the eight charges based on the same single video. (Doc. 28 at 3)

The claims raised for the first time on reply are waived. *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). Also, the claims are unexhausted because Primavera failed to raise the claims in either his brief on direct appeal or his post-conviction motion (Doc. 13, Exhibits 2 and 6) and failed to appeal the order denying his post-conviction motion. *Boerckel*, 526 U.S. at 845. If Primavera returned to state court to exhaust the claims, the state court would deny the claims as untimely, successive, and procedurally defaulted. Fla. R. Crim. P. 3.850(b), (c), (h). Consequently, the claims are barred from federal review. *Snowden*, 135 F.3d at 736.

In any event, it would appear that the claim is without merit. At trial, the agent who reviewed the videos with the jury testified that the compact disc contained eight separate videos (Doc. 13, Exhibit 1, Trial Transcripts at 424–26):

| | |
|---|---|
| [Prosecutor:] | Now, first of all, Special Agent Baute, the format in which these — one second. The format in which these movies are on here, is this some type of program that catalog[s] or basically creates them like this? |
| [Agent:] | Well, there's software that's out there that users can create collages of videos much like you can with home movies and videos. It's not as common for me to see the collage such as this type of video as it is just the individual clips themselves. Somebody's taken more time to put this together in the form of what you'd normally see in like a home movie type DVD. |

. . .

| | |
|---|---|
| [Prosecutor:] | Now, the eight movies, are they contained on different screens? |
| [Agent:] | Yes, they are. |
| [Prosecutor:] | How many total screens were present? |
| [Agent:] | There [were] eight different videos. I don't recall the exact number of actual screens. There would have been eight separate videos, though. |
| [Prosecutor:] | So again, if the record will reflect that there were two per screen, that would be four screens as item three — State's three. I don't know if you can see that from where you are. . . . |

The agent reviewed each of the eight videos and separately opined that each video involved an actual child and was not computer generated. (Doc. 13, Exhibit 1, Trial Transcripts at 426–32) Because the evidence proved that Primavera sold eight separate videos — not one single video involving the same child divided into eight segments, the record refutes both the double jeopardy claim and the ineffective assistance of counsel claim.

Accordingly, it is **ORDERED** that Primavera's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Primavera and **CLOSE** this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Primavera neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on September 24, 2021.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE